UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE LEASURE; AMY LEASURE,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>WILLMARK COMMUNITIES, INC., a corporation; ALPINE CREEKSIDE, INC., a corporation,<br><br>　　　　　　　　　　　Defendants. | Civil No.　11-cv-0443-L (DHB)<br><br>**ORDER:**<br><br>**(1) RESOLVING DISCOVERY DISPUTE [ECF No. 43]; AND**<br><br>**(2) REQUIRING COMPLIANCE WITH SUBPOENA** |

**I. BACKGROUND**

On August 23, 2012, Plaintiffs George Leasure and Amy Leasure filed a document entitled "Joint Motion & Meet and Confer Statement Re: Determination of Discovery Dispute and for an Order to Show Cause Re: Contempt for Failure to Comply With Subpoena Duces Tecum." (ECF No. 43.) Plaintiffs' filing concerns a dispute between Plaintiffs and non-party witness Kimball, Tirey & St. John LLP ("KTS").[1] Specifically, Plaintiffs served a subpoena duces tecum on KTS which sought production of KTS' billing records for unlawful detainer and collection matters on behalf of Defendants Willmark Communities, Inc. and Alpine Creekside, Inc.

///

---

[1] Although Plaintiffs' filing purports to be a "joint motion" by Plaintiffs and KTS, Plaintiffs failed to comply with Section 2.f.4 of the Court's Electronic Case Filing Administrative Policies and Procedures Manual, which requires that Plaintiffs certify that the content of the document is acceptable to KTS.

1   On August 24, 2012, the Court issued an order requiring Defendants and KTS to file any
2   response on or before September 6, 2012. (ECF No. 44.) Defendants filed their response on September
3   6, 2012. (ECF No. 45.) KTS filed a joinder to Defendants' response that same day. (ECF No. 46.)
4   For the reasons set forth below, the Court **ORDERS** non-party KTS to comply with the
5   subpoena duces tecum, as modified below.

## II.  DISCOVERY DISPUTE

**A.   Subpoena and Objections**

Plaintiffs claim to have served KTS with the subpoena on July 9, 2012. (ECF No. 43 at 1:26-27.)[2]   The subpoena commanded the production of "billing records for unlawful detainers and collections on behalf of [Defendants] for the calendar years 2009, 2010 [and] 2011." (ECF No. 43-2 at 2.)  KTS, a law firm that has provided legal services on Defendants' behalf, served an Objection to Subpoena, dated July 19, 2012, in which the following objection was made to the requested documents:

> KTS objects to this request on the grounds that it is vague and ambiguous as to the term "billing records."  The request is overbroad in that it seeks records for calendar years 2009, 2010 and 2011.  The request additionally seeks the disclosure of irrelevant information unlikely to lead to the discovery of otherwise admissible evidence.  The request also seeks the disclosure of documentation protected by the attorney-client and attorney work product privileges (USCS Fed. Rules Evid. R. 502).  The request may also seek consumer information protected by Section 5 of the Federal Trade Commission Act.  For the foregoing reasons, KTS will not be providing documents responsive to this request.

(*See e.g.*, ECF No. 43-3 at 2:2-8.)

Plaintiffs state that during their meet and confer process with KTS, the parties agreed to replace the term "billing records" with the term "final invoice(s) for payment(s), redacted to remove confidential attorney-client communication or protected work product." (ECF No. 43 at 2:13-15.)

**B.   Plaintiff's Position**

In their memorandum of points and authorities in support of their position that KTS should be required to comply with the subpoena, Plaintiffs contend that the requested documents should be produced because: "(1) settled [N]inth [C]ircuit law holds the subpoenaed documents are nonprivileged; (2) the information sought is directly related to a contested issue; and (3) even were the objections valid,

---

[2] Page numbers for docketed materials cited in this Order refer to those imprinted by the Court's electronic filing system.

they are waived as being untimely." (ECF No. 43-1 at 2:5-7.)

First, relying on the Ninth Circuit's decision in *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 128 (9th Cir. 1992), Plaintiffs contend that although information found in attorney invoices "that reveals specific research or litigation strategy" may be protected from disclosure, "information on the identity of the client, the case name for which payment was made, the amount of the fee, and the general nature of the services performed . . . is not privileged."

Second, Plaintiffs maintain that the requested information is not only discoverable, but directly relevant to whether Defendants are "debt collectors" within the meaning of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and its California counterpart, the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788.2 *et seq.* Specifically, Plaintiffs contend that the requested attorney invoices are relevant to whether Defendants "regularly" collect debts such that they would fall under the statutes' respective definitions of "debt collector."

Third, Plaintiffs argue that KTS waived its objections to the subpoena for two reasons: (1) KTS failed to comply with the time limit for objecting set forth in Rule 45(d) of the Federal Rules of Civil Procedure[3]; and (2) because KTS objected, in part, based on a claim of privilege, KTS was required to provide a privilege log within a "reasonable time" and KTS has failed to do so.

Based on these arguments, Plaintiffs request that the Court issue an order compelling KTS to produce the requested invoices or, in the alternative, requiring KTS to show cause why it should not be held in contempt of court pursuant to Rule 45(e).

**C.     Defendants' Position**

Defendants object to the production of their attorneys' invoices on grounds that production of the invoices would violate Defendants' right to financial privacy and the attorney-client privilege, the documents are not relevant to any claim or defense in this action, and Plaintiffs have failed to adequately demonstrate that KTS waived its objections.

First, Defendants contend that the *Clarke* decision is distinguishable and that even that case confirms that Defendants' privilege concerns are justified because attorney "records which reveal the motive of the client in seeking representation, litigation strategy or the specific nature of the services

---

[3] All subsequent references to "Rules" shall refer to the Federal Rules of Civil Procedure.

provides fall within the privilege, even if the amount of the fees and general nature of the services performed may not" be privileged. (ECF No. 45 at 8:5-8.) Thus, Defendants have offered to provide Plaintiffs with a breakdown "of all fees broken out by client and the general nature of the services performed by the firm, but [Defendants] do oppose the broad request for all billing records." Defendants take issue with Plaintiff's refusal to accept Defendants' offer of a reasonable accommodation (i.e., a separate breakdown of the fees paid by client and the general nature of the services rendered). Defendants argue that "[i]f Plaintiffs really are interested in the total amount of billings and the general nature of the services rendered for each of the defendants because of Plaintiffs' disputed and mistaken notion it may have some evidentiary value, Defendants have already offered that. It was Plaintiffs, and their counsel, who have been unwilling to compromise." (*Id.* at 8:10-13.)

Second, Defendants maintain that their attorneys' invoices are beyond the scope of permissible discovery. Defendants argue that KTS' involvement in unlawful detainer actions on behalf of Defendants is irrelevant to the issue of whether Defendants "regularly" collect debts because unlawful detainer actions are, as a matter of law, not debt collection. Moreover, KTS' actions are not relevant because there are no vicarious liability allegations in this action.

Third, Defendants argue that Plaintiffs have failed to establish that KTS waived any objections. Specifically, Defendants contend that KTS' Objection to Subpoena is dated July 19, 2012, only ten days after Plaintiffs claim to have served the subpoena. Moreover, Plaintiffs have provided no proofs of service to support their position that KTS' objections were served on either July 25 or 27, 2012. Thus, KTS' objections complied with Rule 45's requirement that objections to subpoenas "be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(c)(2)(B).

### III. LEGAL STANDARD

The threshold requirement for discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). In addition, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The

relevance standard is thus commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). However broadly defined, relevancy is not without "ultimate and necessary boundaries." *Hickman*, 329 U.S. at 507. Accordingly, district courts have broad discretion to determine relevancy for discovery purposes. *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

District courts also have broad discretion to limit discovery. For example, a court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(I).

Under Rule 45, any party may serve a subpoena commanding a non-party "to produce documents, electronically stored information, or tangible things." Fed. R. Civ. P. 45(a)(1)(C). Any such subpoena is subject to the relevance requirements set forth in Rule 26(b). Fed. R. Civ. P. 26(b)(1). As noted above, the non-party may make objections to the subpoena within fourteen days after service, or before the time for compliance if less than fourteen days. Fed. R. Civ. P. 45(c)(2)(B). Upon a timely motion, the Court may quash or modify the subpoena for any one of the reasons set forth in Rule 45(c)(3)(A), such as the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or it "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv).

## IV. ANALYSIS

**A.  Waiver**

The Court first turns to the issue of waiver. In so doing, the Court agrees with Defendants that Plaintiffs have failed to establish that KTS' objections were untimely. KTS' Objections to Subpoena are dated July 19, 2012, only ten days after Plaintiffs claim to have served the subpoena. Although Plaintiffs filed a document entitled Joint Meet & Confer Statement (ECF No. 43), this purported joint statement failed to comply with Section 2.f.4 of the Court's Electronic Case Filing Administrative Policies and Procedures Manual, which requires that Plaintiffs certify that the content of the document

is acceptable to KTS. Moreover, KTS has filed a joinder to Defendants' response (ECF No. 46), thereby joining in Defendants' argument that there was no waiver. Thus, although Plaintiffs' purportedly joint statement indicates that KTS served its Objections to Subpoena on July 25, 2012, and Plaintiffs' supporting memorandum claims that the objections were served on July 25, 2012, the evidence presented to the Court demonstrates that the Objections to Subpoena were dated July 19, 2012, within the fourteen day period permitted under Rule 45(c)(2)(B). The lack of any proofs of service, combined with the date of the objections and KTS' joinder in Defendants' response, compels the Court to conclude that KTS has not waived its objections.

Moreover, contrary to Plaintiffs' assertion, although a privilege log is a common method of complying with Rule 45(d)(2)(A), a privilege log is not required. All that is required is a description of "the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(d)(2)(A)(ii). It is apparent that KTS' objections and the subsequent written communication and August 20, 2012 in person meet and confer session sufficiently "enabled the [Plaintiffs] to assess the claim" of privilege made by KTS. Indeed, Plaintiffs state that following the meet and confer efforts, the parties were able to resolve KTS' privilege concerns by modifying the language in the subpoena to permit redaction of any confidential attorney-client communications or protected work product. (*See* ECF No. 43 at 2:13-15.) Accordingly, the absence of a privilege log does not amount to a waiver of KTS' asserted privileges.

**B.     Privilege**

Because the Court concludes that KTS has not waived any privileges, the next issue is whether any privilege exists to prevent the disclosure of the subpoenaed records. Defendants contend the disclosure of the records would "infringe on the right of financial privacy and the attorney-client privilege." (ECF No. 45 at 4:24-25.)

"Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law." *Clarke*, 974 F.2d at 129 (citing *United States v. Zolin*, 491 U.S. 554, 562 (1989); *United States v. Hodge & Zweig*, 548 F.2d 1347, 1353 (9th Cir. 1977); Fed. R. Evid. 501). However, "[n]ot all communications between attorney and client are privileged. [Ninth Circuit]

decisions have recognized that the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege." *Id.* (citing *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988); *In re Grand Jury Witness (Salas and Waxman)*, 695 F.2d 359, 361-62 (9th Cir. 1982) (per curiam); *Hodge & Zweig*, 548 F.2d at 1353; *United States v. Cromer*, 483 F.2d 99, 101-02 (9th Cir. 1973). On the other hand, "correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege." *Id.* (citing *Salas*, 695 F.2d at 362). "The burden of establishing that the attorney-client privilege applies to the documents in question rests with the party asserting the privilege." *Id.* (citing *Tornay*, 840 F.2d at 1426).

In *Clarke*, the Ninth Circuit performed an *in camera* review of the disputed attorney invoices and determined "that they do not contain privileged communication between attorney and client. The statements contain information on the identity of the client, the case name for which payment was made, the amount of the fee, and the general nature of the services performed. . . . [T]his type of information is not privileged. [Citations.] We find nothing in the statements that reveals specific research of litigation strategy which would be entitled to protection from disclosure." *Id.* at 130.

Here, Plaintiffs' initial request for all "billing records" related to KTS' unlawful detainer and collections work on behalf of Defendants potentially infringes on the attorney-client privilege to the extent such records "reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law." However, Plaintiffs have agreed to narrow the scope of the subpoena by only seeking "final invoice(s) for payment(s), redacted to remove confidential attorney-client communication or protected work product." (ECF No. 43 at 2:13-15.) Thus, Plaintiffs have affirmatively disclaimed any intent to seek protected attorney-client information, and the Court views the revised subpoena language to be consistent with the Ninth Circuit's instruction in *Clarke*.

Defendants have failed to meet their burden of establishing that the requested documents, "redacted to remove confidential attorney-client communication or protected work product," violates

the privilege. Rather, Defendants appear to argue that the documents are privileged because they are not relevant. (*See* ECF No. 45 at 6:10-19.) Such logic is unpersuasive.

Finally, based on the Ninth Circuit's finding in *Clarke* that attorney invoices are not privileged to the extent they do not reveal specific research or litigation strategy, the Court rejects Defendants' contention that disclosure of the subpoenaed records infringes on Defendants or KTS' financial privacy rights.

**C.     Relevance**

The final issue for the Court's consideration is whether the subpoenaed documents are relevant. It must be recognized that the scope of discoverable material is broad. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). In addition, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Here, Defendants have argued in their currently pending motion for summary judgment that they cannot be held liable under the FDCPA or RFDCPA because they are not "debt collectors" under the statutes. (ECF No. 38-1 at 7:7-8.) Specifically, Defendants contend that they do not "regularly" collect debt such that they can be classified as "debt collectors." (*Id.* at 14:16-15:5.) Plaintiffs contend otherwise. (ECF No. 39 at 4:6-7:4.)

Given the parties' respective positions regarding whether Defendants satisfy the statutory definitions of "debt collectors," the Court finds that Plaintiffs should not be barred from seeking discovery from KTS in order to support Plaintiffs' position that Defendants regularly engage in debt collection practices. Defendants contend that KTS only engages in unlawful detainer litigation; however, it is reasonable to conclude that KTS may assist the Defendants in collecting outstanding debts from the tenant after the unlawful detainer action is adjudicated. Moreover, the Court notes that, under the FDCPA, debt collection can be done "directly *or indirectly*." 28 U.S.C. § 1692a(6) (emphasis added). Plaintiffs claim that Defendants regularly collect debts indirectly through their attorneys. Thus, the requested documents are relevant to the parties' claims and the subject matter of this action.

///

The Court refrains from making any ruling as to whether Plaintiffs will ultimately be able to establish that Defendants are "debt collectors" under either the FDCPA or the RFDCPA, as the resolution of that issue is not before the Magistrate Judge nor is it required in order to resolve the instant discovery dispute. However, Plaintiffs should be entitled to seek discovery in order to make this argument at the appropriate stage of this litigation.[4]

**D.     Modification to Subpoena**

As discussed above, Plaintiffs have agreed to modify the scope of the subpoena to include only a demand that KTS produce "final invoice(s) for payment(s), redacted to remove confidential attorney-client communication or protected work product," for unlawful detainer and collections matters on Defendants' behalf for the calendar years 2009 through 2011. (ECF No. 43 at 2:13-15.) Such modification alleviates any concern that the subpoena seeks confidential attorney-client privileged information.

Defendants contend that Plaintiffs "have been unwilling to compromise" (ECF No. 45 at 8:13) because Plaintiffs rejected Defendants' offer to produce "all fees broken out by client and by the general nature of the services performed by" KTS. (*Id.* at 5:25-26.) However, Plaintiffs are entitled to pursue appropriate discovery in the manner they choose. Had Plaintiffs' desired what Defendants offered, Plaintiffs could have served Defendants with interrogatories seeking such information. Plaintiffs instead opted to subpoena a non-party for records containing this information. This is an acceptable method of discovery. Moreover, there has been no showing that compliance with the subpoena would impose

---

[4] The Court rejects Defendants contention that no discovery should be permitted because "there is no vicarious liability under the" FDCPA. (ECF No. 45 at 4:14-15.) In the context of FDCPA claims, "Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken." *Fox v. Citicorp Credit Servs.*, 15 F.3d 1507, 1516 (9th Cir. 1994).

Additionally, although an unlawful detainer action may not be "debt collection" under the FDCPA because it seeks to recover property rather than money (*see Arvizu v. GMAC Mortgage, LLC*, 2011 U.S. Dist. LEXIS 30046, at *9-10 (E.D. Cal. Mar. 23, 2011)), the statutory definition of "debt" contained in the RFDCPA differs from its federal counterpart. Indeed, the RFDCPA's definition of "debt" includes "money, *property* or their equivalent which is due or owing or alleged to be due or owing." Cal. Civ. Code § 1788.2(d) (emphasis added).

Finally, and not surprisingly, Defendants have not attempted to argue that KTS' work performed on collection matters, as opposed to unlawful detainer matters, is not "debt collection." Thus, Defendants have failed to explain how invoices related to collection matters is not relevant to this litigation.

an undue burden on KTS.

Finally, pursuant to the Court's power to modify a subpoena in order to protect non-parties (i.e., tenants and/or debtors from whom KTS allegedly collected debts) from disclosure of privileged or protected matter (*see* Fed. R. Civ. P. 45(c)(3)(A)(iii)), the Court finds that the invoices produced by KTS shall be redacted to remove the names and personal identification information (i.e., addresses, telephone numbers, etc.) of any tenants or debtors to the extent such information is contained in the invoices. KTS shall instead identify each tenant or debtor using a unique identifier that will sufficiently allow Plaintiffs to determine the number and frequency of any unlawful detainer or collections work performed by KTS on Defendants' behalf.

## V.  CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** non-party KTS to comply with the subpoena duces tecum no later than **October 5, 2012**.  The invoices shall be redacted to remove: (1) all confidential attorney-client communications or protected work product; and (2) the names and personal identification information of any tenants or debtors.  Counsel for Plaintiffs shall serve KTS' counsel with a copy of this Order within one (1) business day of the date of this Order.

In light of the Court's ruling, Plaintiffs' alternative request that KTS be held in contempt is **DENIED**.

**IT IS SO ORDERED.**

DATED:  September 21, 2012

DAVID H. BARTICK
United States Magistrate Judge