

1

2      2013 MAR 14  AM 11:47

3      CLERK U.S. DISTRICT COURT
       SOUTHERN DISTRICT OF CALIFORNIA

4

5                              BY  a                    DEPUTY

6

7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10  | GEORGE LEASURE and AMY LEASURE, | CASE NO. 11-CV-00443 BEN (DHB) |

11                                                  **ORDER:**

12                              Plaintiffs,      **(1) GRANTING DEFENDANTS'**
                                                **MOTION FOR SUMMARY**
13          vs.                                 **JUDGMENT** [Docket No. 38]

14                                              **(2) DENYING PLAINTIFFS'**
                                                **MOTION FOR PARTIAL**
15                                              **SUMMARY JUDGMENT** [Docket
                                                No. 50]
16      WILLMARK COMMUNITIES, INC.
17      and ALPINE CREEKSIDE, INC.,             **(3) DENYING AS MOOT MOTION**
                                                **TO EXCLUDE IMPROPER**
                                    Defendants. **EXPERT TESTIMONY AND FOR**
18                                              **RULE 37 SANCTIONS** [Docket No.
                                                52]
19

20          Presently before the Court is Defendants' Motion for Summary Judgment

21  (Docket No. 38), Plaintiffs' Motion for Partial Summary Judgment (Docket No. 50),

22  and Defendants' Motion to Exclude Improper Expert Testimony and for Rule 37

23  Sanctions (Docket No. 52).  For the reasons stated below, Defendants' Motion for

24  Summary Judgment is **GRANTED**, Plaintiffs' Motion for Partial Summary Judgment

25  is **DENIED**, and Defendants' Motion to Exclude Improper Testimony and for Rule 37

26  Sanctions is **DENIED AS MOOT**.

27  ///

28  ///

- 1 -

## BACKGROUND

1        Plaintiffs George and Amy Leasure formerly resided at Creekside Meadows,

2 located at 1750 Arnold Way, Alpine, CA 91901. (Teague Decl., Exh. A.) "Creekside

3 Meadows" is a brand name for a family of apartment complexes managed and

4 maintained by Defendant Willmark Communities.  Both Creekside Meadows and

5 Willmark Communities are owned and operated by a single individual, Mark Schmidt.

6 (Schmidt Decl. ¶ 2.)  Defendant Alpine Creekside, doing business as Creekside

7 Meadows, holds title to Creekside Meadows.  (Teague Decl., Exh. A.)  Alpine

8 Creekside maintains a ficticious business name for "Creekside Meadows" on file with

9 the San Diego County Recorder. (*Id.*)

10        The Residential Lease Agreement used by Willmark Communities identifies the

11 owner of the property as Alpine Creekside, and indicates that Willmark Communities

12 acts as the owner's agent. (Peel Decl., Exh. B.) This information is provided to tenants

13 so that they are aware of the actual entities who own and manage the property, but

14 tenants do not interact with their landlord via its full corporate title except via the name

15 of the community where they reside. For example, the Leasures wrote their rent checks

16 to "Creekside Meadows" and all correspondence with the Leasures utilized that name.

17 (Schmidt Decl. ¶ 3; Peel Decl. ¶ 4.)

18        On September 18, 2009, Plaintiffs moved into the apartment located at 1750

19 Arnold Way, Unit 14, Alpine, CA 91901, located in Building 17 of Creekside

20 Meadows. (Ruiz Decl. ¶ 2.) The Residential Lease Agreement was executed on

21 September 12, 2009, with a term of 16 months and 13 days. (Peel Decl., Exh. B; Smith

22 Decl. ¶ 6.) The base rent for the apartment was $980 per month, and there was a

23 concession for on-time payments that permitted rental payments of $895. (Peel Decl.,

24 Exh. B.) After moving into this apartment, Plaintiffs indicated that they wished to

25 move from the upstairs apartment to a downstairs one.  (Smith Decl. ¶ 5.) Plaintiffs

26 were put on a wait list for a downstairs apartment. (*Id.*)

27        A new computer program re-categorized Plaintiffs' Lease as an annual lease and

28

1   issued a premature renewal lease on August 31, 2010, which incorrectly listed the
2   Lease as expiring on October 31, 2010. (Ruiz Decl. ¶ 6.) The Leasures decided to
3   vacate their apartment by the end of October 2010, relying on the renewal letter. (*See*
4   Peel Decl., Exh. F.)  An initial final account statement was issued on November 22,
5   2010, which treated the move out as a breach of the Lease and included accelerated rent
6   through January 2011 and late fees, for a total account balance of $4,917.05. (*Id.*, Exh.
7   G.)  The account statement included a cover letter addressed to Ms. Leasure, which
8   stated: "This communication is for the purpose of a debt collection account *we own*.
9   This is an attempt to collect a debt.  Any information will be used for that purpose."
10  (*Id.* (emphasis added).)

11          On December 7, 2010, Mr. Leasure called Defendants and notified them of the
12  error and the premature renewal letter. (Ruiz Decl. ¶ 4.) The account was placed under
13  review.  The error was acknowledged, a credit of $4,278.50 was issued to the Leasures,
14  and a revised account statement was issued on December 7, 2010. (*Id.* ¶¶ 5-10; Peel
15  Decl., Exh. J.)  This revised account statement stated that Ms. Leasure had an
16  outstanding balance of $638.55. (Peel Decl., Exh. J.) On January 14, 2011, Creekside
17  Meadows sent Ms. Leasure a letter, reminding her that she had an outstanding balance
18  of $638.55. (Christison Decl., at 143.)  On March 9, 2011, Creekside Meadows sent
19  Ms. Leasure a final notice, once again stating that Ms. Leasure had an outstanding
20  balance of $638.55. (*Id.* at 144.)

21          Plaintiffs filed suit on March 3, 2011.  (Docket No. 1.)  The Complaint alleges:
22  (1) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692,
23  *et seq.*; (2) violations of the California Rosenthal Act, CAL. CIV. CODE §§ 1788-
24  1788.33; (3) fraud; and (4) bad faith retention of security deposit. (*Id.*)

25          Presently before the Court is Defendants' Motion for Summary Judgment
26  (Docket No. 38), Plaintiffs' Motion for Partial Summary Judgment (Docket No. 50),
27  and Defendants' Motion to Exclude Improper Expert Testimony and for Rule 37
28

1  Sanctions (Docket No. 52).[1]

2  **DISCUSSION**

3  **I.  MOTIONS FOR SUMMARY JUDGMENT**

4  Summary judgment must be granted where the record shows "there is no genuine

5  dispute as to any material fact and the movant is entitled to judgment as a matter of

6  law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

7  (1986). The moving party must "persuade the court that there is no genuine issue of

8  material fact." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099,

9  1102 (9th Cir. 2000).

10  Defendants seek summary judgment on all claims,[2] and Plaintiffs seek summary

11  judgment on the first and second claims. The Court will consider the two motions for

12  summary judgment together.

13  **A.  Claim 1: Violations of the FDCPA**

14  Plaintiffs' first claim alleges violations of the FDCPA, 15 U.S.C. §§ 1692 *et seq.*

15  Both Plaintiffs and Defendants move for summary judgment on this claim.

16  To establish a prima facie case for violation of the FDCPA, a plaintiff must plead

17

18  [1] Defendants filed evidentiary objections to the Declaration of Stephen G.
19  Recordon. (Docket No. 42.) As the Court does not rely on the Recordon Declaration in reaching its disposition, Defendants' objections are **OVERRULED** as moot.

20  [2] First, Plaintiffs argue that Defendants' summary judgment motion is premature.
21  According to Plaintiffs, the motion was scheduled to foreclose the depositions of Mark Schmidt, Cindy Peel, and Rita Ruiz—Defendants' primary witnesses. Because these
22  three witnesses' knowledge forms the factual basis for Defendants' defense that they neither regularly nor principally collect debts, Plaintiffs argue, it is premature to
23  conclude that no triable issue of fact remains in regards to the claims for violations of the FDCPA and Rosenthal Act.
24  If a party claims it needs additional time to adequately oppose a motion for summary judgment, that party must explain, by affidavit or declaration, its inability to
25  provide opposing declarations, what facts are sought, and how those facts are reasonably expected to create a triable issue. *See Keebler Co. v. Murray Bakery*
26  *Prods.*, 866 F.2d 1386, 1389 (Fed. Cir. 1989); *see also* FED. R. CIV. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot
27  present facts essential to justify its opposition, the court may: . . . allow time to obtain affidavits or declarations or to take discovery."). Plaintiffs, however, failed to seek
28  additional time under Rule 56(d). In addition, Plaintiffs filed their Motion for Partial Summary Judgment, which the Court considers here, after discovery had closed.

1 and prove four elements: (1) the plaintiff is any natural person who is harmed by

2 violations of the FDCPA, or is a "consumer" within the meaning of 15 U.S.C.

3 §§ 1692a(3) and 1692c(d) for purposes of a cause of action pursuant to 15 U.S.C.

4 § 1692c or 15 U.S.C. § 1692e(11); (2) the "debt" arises out of a transaction entered into

5 primarily for personal, family, or household purposes, 15 U.S.C. § 1692a(5); (3) the

6 defendant collecting the debt is a "debt collector" within the meaning of 15 U.S.C.

7 § 1692a(6); and (4) the defendant has violated, by act or omission, a provision of the

8 FDCPA, 15 U.S.C. §§ 1692a-1692o.

9      Plaintiff has not established a prima facie case for violation of the FDCPA,

10 because the third element is not met.  The FDCPA expressly regulates only "debt

11 collectors." *See Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060-61 (9th Cir.

12 2011).  In order to assert direct liability under the FDCPA, a plaintiff must show that

13 the defendant's actions or status render it a "debt collector" for purposes of the Act.

14 *See Heintz v. Jenkins*, 514 U.S. 291, 292 (1995); *Fox v. Citicorp Credit Servs., Inc.*, 15

15 F.3d 1507, 1513 (9th Cir. 1994).

16      The FDCPA defines "debt collector" as:

17

18 *any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of*

19 *any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.* Notwithstanding the exclusion provided by clause (F) of the last

20 sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own

21 which would indicate that a third person is collecting or attempting to collect such debts. . . . The term does not include—

22 . . . .

23 (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow

24 arrangement; (ii) *concerns a debt which was originated by such person*; (iii) *concerns a debt which was not in default at the time it was obtained*

25 *by such person*; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

26

27 15 U.S.C. § 1692a(6).

28      Here, Defendants are not debt collectors for several reasons.  First, Defendants

1   attempted to collect a debt that they originated, as the debt was originated by the parties

2   in course of their relationship through the lease.

3        Second, no debt was in default prior its acquisition. In *De Dios v. International*

4   *Realty & Investments*, 641 F.3d 1071, 1074 (9th Cir. 2011), the Ninth Circuit held that

5   the exemption under 15 U.S.C. § 1692a(6)(F)(iii) applied where a manager was

6   retained to collect rent before it was considered to be in default.  Here, Willmark

7   Communities was similarly provided with authority to collect rent and expenses when

8   they were not yet in default on behalf of Alpine Creekside.

9        Moreover, Willmark Communities is entitled to use the "Creekside Meadows"

10   business name.  A creditor does not fall within the "uses any name other than his own"

11   exception in 15 U.S.C. § 1692a(6) unless the creditor uses a pseudonym or alias "which

12   would indicate that a third person is collecting or attempting to collect" the debt.

13   *Friedman v. Rubinstein*, No. 97 C 6610, 1997 WL 757875, at *3 (N.D. Ill. 1997).

14   Creditors may collect their debts under names other than their own as long as they have

15   consistently dealt with their debtors under the other name, so as not to mislead their

16   debtors as to whom is attempting to collect such debts. *See Dickenson v. Townside*

17   *T.V. & Appliance, Inc.*, 770 F. Supp. 1122, 1128 (S.D. W. Va. 1990).  Here, Willmark

18   Communities relied on the services of its affiliated management entity to issue account

19   statements for mailing to tenants.  The lease identified the full corporate names of the

20   owner and its agent and all cover letters for the account states expressly that the debt

21   remained owned by the originator.

22        Accordingly, Defendants' motion for summary judgment as to the first claim is

23   **GRANTED** and Plaintiffs' motion for summary judgment as to the first claim is

24   **DENIED**.

25        **B.**   **Claim 2: Violations of the California Rosenthal Act**

26        Plaintiffs' second claim alleges violations of the California Rosenthal Act, CAL.

27   CIV. CODE §§ 1788-1788.33.  Both Plaintiffs and Defendants move for summary

28   judgment on the second claim.

1    The Rosenthal Act governs the collection of "consumer debts" by "debt
2    collectors." CAL. CIV. CODE §§ 1788.2(c), 1788.2(f). "Consumer debt" is defined as
3    "money, property or their equivalent, due or owing or alleged to be due or owing from
4    a natural person by reason of a consumer credit transaction." CAL. CIV. CODE
5    § 1788.2(f). A "consumer credit transaction," in turn, is defined as "a transaction
6    between a natural person and another person in which property, services or money is
7    *acquired on credit* by that natural person from such other person primarily for personal,
8    family, or household purposes." CAL. CIV. CODE § 1788.2(e) (emphasis added).

9        "Debt collection" under the Rosenthal Act, therefore, requires a "consumer credit
10   transaction" which in turn requires the extension of credit. The Court is not aware of
11   any cases holding that rent collection equates to "debt collection" or that rent involves
12   a "consumer credit transaction" under the Rosenthal Act. Plaintiffs have not
13   established that Creekside Meadows, as a landlord, extends credit to tenants. *See Sanai*
14   *v. U.D. Registry, Inc.*, No. B170618, 2005 WL 361327, at *16 (Cal. App. 2d Dist. Feb.
15   16, 2005) (a month-to-month tenancy was not a "consumer credit transaction" and
16   unpaid rent was not a "consumer debt"). Accordingly, Plaintiffs have not established
17   that Creekside Meadows engaged in the collection of a consumer debt for the purposes
18   of the Rosenthal Act.

19       Accordingly, Defendants' motion for summary judgment as to the second claim
20   is **GRANTED** and Plaintiffs' motion for summary judgment as to the second claim is
21   **DENIED**.

22       **C.    Claim 3: Fraud**

23       Plaintiffs' third claim alleges fraud. Plaintiffs allege that they originally
24   requested to rent a first-floor apartment. (Compl. ¶ 7.) According to Plaintiffs, "[i]n
25   order to induce Plaintiffs to rent the apartment, Defendants represented no first-floor
26   apartment was currently available but that Plaintiffs would receive the next such unit
27   and could move there at no extra charge. In reliance on this representation Plaintiffs
28   rented the apartment." (*Id.*) Defendants move for summary judgment on this claim.

1  Plaintiffs do not oppose summary judgment on this claim.

2  Tortious fraud or deceit occurs when a party "willfully deceives another with

3  intent to induce him to alter his position to his injury or risk." CAL. CIV. CODE § 1709.

4  The elements of fraud are (1) misrepresentation; (2) knowledge of falsity; (3) intent to

5  defraud; (4) justifiable reliance; and (5) resulting damage. 5 B.E. WITKIN, SUMMARY

6  OF CALIFORNIA LAW § 772 (10th ed. 2012).

7  The Court will consider whether there has been a misrepresentation.  For a

8  misrepresentation to exist, a defendant must have made a representation consisting of

9  one of the following: "1. The suggestion, as a fact, of that which is not true, by one who

10  does not believe it to be true; 2. The assertion, as a fact, of that which is not true, by

11  one who has no reasonable ground for believing it to be true; 3. The suppression of a

12  fact, by one who is bound to disclose it, or who gives information of other facts which

13  are likely to mislead for want of communication of that fact; or 4. A promise, made

14  without any intention of performing it." CAL. CIV. CODE § 1710.

15  Here, no misrepresentation took place because a wait list did exist, and was

16  maintained on the premises by the staff.  In addition, Plaintiffs were in fact placed on

17  the wait list at the time of their request.  Kaitlin Smith testified:

18
19
20
21  > a wait list I had created was already in existence [when the Leasures requested to be moved to a downstairs apartment] and I informed them that I could put them on the list but that no suitable downstairs apartments were available for them at that time.  I placed them on the wait list behind at least three (3) other longer term residents who were already on the list at that time.

22
23  (Smith Decl. ¶ 5.)

24  Plaintiffs do not submit any evidence to the contrary, nor do they oppose

25  summary judgment on this claim.  Accordingly, Defendants' motion for summary

26  judgment as to the third claim is **GRANTED.**

27  **D.  Claim 4:  Bad Faith Retention of Security Deposit**

Plaintiffs' fourth claim alleges bad-faith retention of their security deposit.

28  Defendants move for summary judgment on this claim.  Plaintiffs do not oppose

summary judgment on this claim.

According to California Civil Code § 1950.5(b):

> As used in this section, "security" means any payment, fee, deposit, or charge, including, but not limited to, any payment, fee, deposit, or charge, except as provided in Section 1950.6, that is imposed at the beginning of the tenancy to be used to reimburse the landlord for costs associated with processing a new tenant or that is imposed as an advance payment of rent, used or to be used for any purpose, including, but not limited to, any of the following:
> (1) The compensation of a landlord for a tenant's default in the payment of rent.
> (2) The repair of damages to the premises, exclusive of ordinary wear and tear, caused by the tenant or by a guest or licensee of the tenant.
> (3) The cleaning of the premises upon termination of the tenancy necessary to return the unit to the same level of cleanliness it was in at the inception of the tenancy.

Security deposits are subject to refund to the tenant at the termination of the tenancy, after lawful deductions. CAL. CIV. CODE § 1950.5. When the deposit is security for the tenant's payment of rent, cleaning of premises, or the repair of damages caused by the tenant, the cost of these items may be deducted by the landlord from the deposit. CAL. CIV. CODE § 1950.5(e). The landlord must deliver to the tenant a written itemized statement of the amount of the deposit, its disposition, and the balance due the tenant. CAL. CIV. CODE § 1950.5(f) & (g).

Here, the Residential Lease Agreement provided for payment of a security deposit in the amount of $99. (Peel Decl., Exh. B (Residential Lease Agr. § 7(a)).) The Agreement also provided when the security deposit could be deducted against an outstanding balance upon move-out:

> Should Lessee comply with all the terms, covenants, and conditions of the Lease to be performed by said Lessee and promptly pay all of the rent provided for herein and all other sums payable by Lessee to Lessor hereunder, the said security deposit shall be returned to Lessee upon termination of the Lease. . . . UPON TERMINATION OF TENANCY, LESSOR MAY CLAIM OF SUCH SECURITY DEPOSIT SUCH AMOUNTS NECESSARY TO REMEDY DEFAULTS WITH RESPECT TO PAYMENT OF RENT, REPAIR OF DAMAGE (INCLUDING PAINT DAMAGE) TO EITHER THE APARTMENT, PERSONAL PROPERTY OF LESSOR IF ANY, OR COMMON AREAS OF THE APARTMENT COMMUNITY CAUSED BY THE LESSEE OR

HIS/HER GUEST, AND TO CLEAN THE APARTMENT (INCLUDING ALL JANITORIAL, WINDOWS, WINDOW COVERINGS, AND FLOOR COVERINGS) UPON TERMINATIONS. Said security deposit shall not constitute a measure of Lessor's damages in the event of a default.

(*Id.*)

Willmark Communities provided Ms. Leasure with a copy of an itemized statement indicating the basis for and amount of any security received as well as the disposition of that security. After Mr. Leasure called Willmark Communities, Willmark Communities gave Ms. Leasure credits for the internal technical issue which led to the incorrect renewal letter. Even after the credits were made, however, a balance pursuant to the terms of the Lease was due and owing in excess of the security deposit. Specifically, the statement showed that the Leasures had an outstanding balance of $737.55, which consisted of: (1) $31.50 for one prorated day for rent for November 1, 2010; (2) $150.97 for unpaid utilities; (3) $40 for carpet cleaning; (4) $490 for rent undercharge balance for November 2009 to November 2010; (5) $15.08 for rent undercharge balance for September 2009; and (6) $10 for touch-up paint and supplies. (Ruiz Decl. ¶ 8; Peel Decl., Exh. G.) An audit of the final account statement was later performed. The audit showed that the total due should have been $552.72 pursuant to the lease agreement and credit for Defendants' policy of capping utilities for tenants, which was not applied in the revised final account statement. When the rental deposit was applied, the total balance due was $453.75. (Ruiz Decl. ¶ 10.) No balance was owed to the Leasures.

Accordingly, Defendants' motion for summary judgment as to the fourth claim is **GRANTED**.

As the above issues are dispositive, the parties' remaining arguments will not be addressed.

///

///

///

- 10 -

11-CV-00443

1  II.    **DEFENDANTS' MOTION TO EXCLUDE IMPROPER EXPERT TESTIMONY AND**

2         **FOR RULE 37 SANCTIONS**

3         Defendants move to exclude the Declaration of Richard Alter, filed in support

4  Plaintiffs' Motion for Partial Summary Judgment.  In addition, Defendants request

5  sanctions under Federal Rule for Civil Procedure 37. Because the Court does not rely

6  on Alter's Declaration in the disposition of the Motion for Partial Summary Judgment,

7  the Motion to Exclude is **DENIED AS MOOT**.

8                                  **CONCLUSION**

9         For the reasons stated above, Defendants' Motion for Summary Judgment is

10 **GRANTED** and Plaintiffs' Motion for Partial Summary Judgment is **DENIED**.

11 Summary judgment is granted in favor of Defendants on all claims.

12        Defendants' Motion to Exclude Improper Testimony and for Rule 37 Sanctions

13 is **DENIED AS MOOT**.

14        **IT IS SO ORDERED.**

15

16 DATED: March ___, 2013

17                                          HON. ROGER T. BENITEZ
                                           United States District Judge

18

19

20

21

22

23

24

25

26

27

28